

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMH:JOE
F. #2022R00309

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 28, 2022

<u>By ECF and Email</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. John Lhota
       <u>Criminal Docket No. 22-411 (FB) (RML)</u>

Dear Judge Levy:

  The government respectfully submits this letter in opposition to defendant John Lhota's application for release pending trial.  <u>See</u> ECF No. 16 (Sept. 22, 2022) ("the Application").  Lhota is charged in the above-referenced Indictment with arson causing injuries in violation of Title 18, United States Code, Section 844(i) on April 3, 2022.

  Under the Bail Reform Act, there is a rebuttable presumption in favor of detention for arson cases like this one.  That presumption is entirely appropriate here: the defendant set fire to a LGBTQ+ bar in Brooklyn.  Two of the bar's employees were burned and required hospitalization.  The dangerousness of this conduct—conduct that could have caused death—is evident, and the defendant's post-arrest behavior makes equally clear that he is an extreme flight risk.  For the reasons set forth below, there is no condition or combination of conditions of release that could reasonably assure that the defendant will not flee or endanger others.  The Application should therefore be denied.

I.        Statement of Facts[1]

On April 3, 2022, at approximately 9:02 p.m., and as captured on video footage, the defendant left their apartment in the Bushwick neighborhood of Brooklyn, New York, walked to a nearby gas station, purchased a red gas canister and then filled it with gasoline. See Complaint, ECF No. 1 at ¶¶ 6-7. The defendant then walked directly to the Rash bar and nightclub, which is on the ground floor of a multi-story building at 941 Willoughby Avenue in Brooklyn, New York with multiple apartments above it. In the dark of night, the defendant entered the establishment as staff was working, and, unnoticed by the bar's staff, poured gasoline onto the floor of a lounge area, and used a cigarette lighter to ignite an explosive fire that severely burned and injured two of the bar's employees. See ECF No. 1 at ¶¶ 8-9. Video surveillance footage shows the defendant running out of the bar with their shoes on fire and then walking back to their apartment circuitously—ostensibly for the purpose of evading detection. See ECF No. 1 at ¶¶ 11-12.

At 9:25 p.m., approximately nine New York City Fire Department ("FDNY") trucks and sixty FDNY firefighters arrived at the scene of the crime and over the course of almost two hours proceeded to extinguish the fire, thus saving the lives of the building's residents as well as those in the neighboring buildings. A picture of the torched bar follows:



---

[1] The Second Circuit has held that the government may procced in a bail determination by proffer. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). The proffered evidence seeks only to articulate facts sufficient to justify detention. This evidence is not a complete statement of all of the evidence of which the government is aware or will seek to introduce at trial.

Having put the lives of Rash's employees and the building's residents at severe risk of death, the defendant, no more than three days later, then assaulted a female in their apartment building by trying to strangle her. The defendant was swiftly arrested by New York City Police Department officers. See ECF No. 1 at ¶ 13.

II.     Procedural Posture

The defendant was arrested on April 14, 2022, on the basis of a criminal complaint charging them with one count of arson that directly or proximately resulted in injury to a person in violation of 18 U.S.C. § 844(i). See Complaint, ECF No. 1. The defendant was arraigned that day before the Honorable Roanne Mann, who entered a permanent order of detention, finding that the defendant had been charged with a crime of violence as defined in 18 U.S.C. § 3156(a)(4). Judge Mann granted the defendant leave to reopen and present a bail package in the future. See ECF No. 5. The defendant has been detained in the Metropolitan Detention Center ("MDC") since that date.

III.    Legal Standard

Given the nature of the defendant's alleged crime—namely, arson of property in interstate commerce—there is a presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community." 18 U.S.C. § 3142(e)(3). This presumption may be rebutted by the defendant, who "bears a limited burden of production . . . by coming forward with evidence that [they do] not pose a danger to the community." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). If a defendant meets their burden of production, the presumption favoring detention does not disappear, but remains a factor to be considered by the court.

A district court undertakes a two-step inquiry when evaluating an application for bail. See 18 U.S.C. § 3142(e). First, the Court must determine whether the Government has established that the defendant presents a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e), (f)(2)(B). Second, if the Government meets its initial burden, the Court must determine whether no condition or combination of conditions of release could reasonably assure the defendant will not flee or will not endanger others. See United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007). In making that determination, a court must consider four factors in the detention analysis whether for risk of flight or dangerousness: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g). The risk of flight need only be established by a preponderance of the evidence, while dangerousness must be established by clear and convincing evidence. See Mercedes, 254 F.3d at 436.

IV.     The Defendant Remains Both a Danger to the Community and a Risk of Flight

The nature and circumstances of the offense are incredibly dangerous. The defendant intentionally set fire to a bar at 9:00 on a Sunday night when patrons and

employees could have been severely injured or killed.  Indeed, the defendant's conduct caused two Rash employees to be severely injured.  As for the weight of the evidence, it is overwhelming.  The entire event—the defendant leaving their apartment, their buying a canister of gas at a local gas station, their entry into Rash, their subsequent pouring of gas and igniting it with a cigarette lighter, and their fleeing the scene of the crime and walking back to their apartment—was all captured on video.  That the defendant intentionally planned and committed this crime is thus plain.  Although the defendant has no criminal history prior to the arson, they followed this crime by attempting to strangle a woman living in their apartment building within three days.  This conduct espouses a true danger to the community.  Finally, and relatedly, the seriousness of the danger posed by the prospect of the defendant's release is overwhelming.  By the defendant's own admissions, their mental health issues, when they manifest, pose grave danger to the public and to the defendant—whether by arson or otherwise.  The reckless, potentially deadly nature of the defendant's conduct—standing alone—presents clear and convincing evidence of their danger to the community and is sufficient to justify the defendant's detention pending trial.

       The defendant is also an acute risk of flight given their suicidal ideations.  Numerous district courts have equated suicide to a risk of flight.  See, e.g., United States v. Metz, No. 12-M-01193-JJM, 2012 WL 6632501, at *4 (W.D.N.Y. Dec. 12, 2012); United States v. Krueger, No. 13-20242, 2013 WL 8584873, at *2 (E.D. Mich. July 10, 2013) (concluding "that the Bail Reform Act allows and may, in fact, require me to consider the potential of the Defendant committing suicide in the context of assessing his possibility of non-appearance"); United States v. George-Rodriguez, No. 2:13-CR-378 TS, 2013 WL 3246114, at *6 (D. Utah June 26, 2013) ("While the statute does not appear to permit the Court to detain a defendant based solely on the risk of suicide, it is nonetheless a factor to be considered.").

       The defendant fails to recognize this risk.  The thrust of the defendant's argument in support of release is that release is warranted under a combination of restrictions because they are unable to receive the medical treatment they need from within the MDC.  But those needs for medical treatment turn on the defendant's own repeated admission that they suffer from suicidal ideations.  The defendant has already attempted to commit suicide within the MDC.  See Application at 3.  As such, the defendant asks that they "be transferred to an inpatient psychiatric unit or rigorous outpatient program for a higher level of care."  Id. at 4.  But it is precisely the defendant's risk of suicide, and thus the risk of flight and danger to the community, that requires their continued detention.  The nature and seriousness of the danger posed by the defendant's release is not an abstract concern.  The defendant has proven to resort to incredibly violent conduct that has already injured three individuals—the two individuals injured as a result of the arson and the third individual they assaulted in their apartment building.  Dozens of FDNY firefighters and countless nearby residents risked injury and worse because of the defendant's behavior.  If allowed to remain at liberty, the risk that they will lash out in a similar or worse fashion again is too great.

V.      Conclusion

For the foregoing reasons, the government respectfully submits that the Court should deny the defendant's application because the defendant fails to rebut the presumption of detention and no conditions or combination of conditions are sufficient to ensure against the risk of flight and the safety of the community.

                       Respectfully submitted,

                       BREON PEACE
                       United States Attorney

By:        /s/
                       John O. Enright
                       Assistant U.S. Attorney
                       (718) 254-6203

cc:     Clerk of Court (FB) (By ECF and Email)
        Counsel of Record (By ECF and Email)